[Cite as *Roberts v. Boehl*, 2018-Ohio-1118.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| SHIRLEY L. ROBERTS, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2017-08-039 |
| | : | O P I N I O N |
| - vs - | | 3/26/2018 |
| | : | |
| SCOTT BOEHL, et al., | : | |
| Defendants-Appellees. | : | |


CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2016-CVC-00449


O'Connor, Acciani & Levy, LPA, Wesley M. Nakajima, 600 Vine Street, Suite 1600, Cincinnati, Ohio 45202, for plaintiff-appellant

David P. Bolek, P.O. Box 145496, Cincinnati, Ohio 45250, for defendant-appellee, Scott Boehl


**RINGLAND, J.**

{¶ 1} Plaintiff-appellant, Shirley L. Roberts, appeals the decision of the Clermont County Court of Common Pleas which granted summary judgment in favor of defendant-appellee, Scott Boehl. For the reasons discussed below, this court reverses the trial court's decision and remands for further proceedings.

{¶ 2} On January 12, 2015, Boehl was driving his truck on Interstate 275 and began

to feel lightheaded. Boehl decided he would get off at the next exit, approximately five minutes travel time away. Boehl felt progressively worse as he continued to drive towards the exit.

{¶ 3} Boehl exited the highway at Ohio Pike and turned right, looking for the nearest place to park. He turned right onto Mount Carmel Tobasco Road and then entered the parking lot of Butterbee's restaurant. Boehl positioned his truck to reverse into a parking space.

{¶ 4} Boehl claimed to be unconscious for what occurred next. Boehl's truck reversed out of Butterbee's parking lot and crossed all four lanes on Mount Carmel Tobasco Road. The truck collided with several vehicles in its path, including one driven by Roberts. Boehl's truck stopped after impacting a McDonald's restaurant across the street from Butterbee's.

{¶ 5} In March 2016, Roberts filed a complaint alleging that Boehl was negligent.[1] Boehl answered, raising the affirmative defense of a sudden medical emergency. At his deposition, Boehl testified concerning his recollection of the January accident. Boehl also revealed that a week prior to the accident he suffered a concussion after being physically assaulted. And Boehl testified that six to eight years earlier he had become lightheaded while driving, lost consciousness, and rear-ended a car. Boehl thought he suffered a panic attack in that earlier accident, for which he sought no medical treatment. The January accident was "much more severe" than what he experienced in the earlier accident.

{¶ 6} Roberts moved for summary judgment and filed Boehl's deposition in support. Roberts argued that Boehl could not prove the defense of sudden medical emergency

---

1. Roberts also asserted claims against her insurer, Nationwide Mutual Fire Insurance Company ("Nationwide"), for its subrogated interest in the litigation and for uninsured/underinsured coverage. The McDonald's franchisee and its insurer later intervened in the case, asserting property damage claims against Boehl.

because: (1) his loss of consciousness was not sudden but occurred only after experiencing progressively worsening lightheadedness for miles of driving, and, (2) the accident was foreseeable as Boehl lost consciousness in a similar prior event.

{¶ 7} Boehl responded in a cross-motion for summary judgment asking the court to grant judgment in his favor on the sudden medical emergency defense. Boehl supported his motion with the affidavit of a medical expert witness, Dr. Gerald Steiman. Dr. Steiman's affidavit incorporated his written medical report, which discussed both the methodology and results of his evaluation of Boehl's accident. The report explained that Dr. Steiman interviewed Boehl, conducted a physical examination, and reviewed Boehl's medical records. Dr. Steiman further stated, "[t]his evaluation has been conducted with the assumption that the representations of the examinee are true and correct." Ultimately, the doctor opined that during the January accident Boehl suffered either a seizure related to the earlier concussion or a panic attack. The doctor further opined that Boehl's loss of consciousness was "neither anticipated nor expected" and that Boehl "would not have foreseen he would lose consciousness."

{¶ 8} Boehl also filed the affidavit of a witness to the January accident. The witness stated that Boehl's truck side-swiped the front of her stopped vehicle. The witness saw Boehl inside the truck as it passed her vehicle and it was her impression that Boehl was unconscious during the January accident.

{¶ 9} The trial court found that Boehl's deposition testimony and the two affidavits satisfied Boehl's burden of demonstrating that he was suddenly rendered unconscious by a medical emergency. With respect to whether Boehl had any reason to anticipate the accident, the court credited Dr. Steiman's opinion that Boehl would not have foreseen he would lose consciousness. The court noted that Roberts had not challenged this expert opinion evidence with a contradictory medical opinion. Consequently, the court concluded

that Boehl met his burden of proof with respect to the defense of sudden medical emergency and Roberts failed to meet her reciprocal burden of demonstrating a genuine issue of fact for trial. The court granted summary judgment in favor of Boehl and dismissed the action.[2]

{¶ 10} Roberts appeals and raises the following assignment of error:

{¶ 11} THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT-APPELLEE.

{¶ 12} Roberts argues that there remain genuine issues of fact for trial on whether Boehl suffered a sudden medical emergency and if so, whether the accident was foreseeable.

{¶ 13} This court reviews summary judgment decisions de novo, which means we review the trial court's judgment independently and without deference to the trial court's determinations, using the same standard in our review that the trial court should have employed. *Ludwigsen v. Lakeside Plaza*, LLC, 12th Dist. Madison No. CA2014-03-008, 2014-Ohio-5493, ¶ 8. Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion which is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-70 (1998).

{¶ 14} The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. *Robinson v.*

---

2. Nationwide, the McDonald's franchisee, and the franchisee's insurer also filed motions for summary judgment. Those motions generally supported the arguments made in Roberts' motion but added no additional summary judgment evidence. The court denied these motions and dismissed their claims against Boehl. Nationwide, the McDonald's franchisee and its insurer have not appealed the judgments rendered against them and in favor of Boehl. Nationwide had earlier amended its summary judgment motion with an alternative argument requesting that the court dismiss Robert's uninsured/underinsured claim against it if the court were to grant summary judgment in favor of Boehl. The court granted Nationwide's alternative motion on the basis that it found that Boehl was not liable to Roberts.

*Cameron*, 12th Dist. Butler No. CA2014-09-191, 2015-Ohio-1486, ¶ 9. Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine issue of material fact yet remaining for the trier of fact to resolve. *Id.* In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party. *Vanderbilt v. Pier 27, LLC*, 12th Dist. Butler No. CA2013-02-029, 2013-Ohio-5205, ¶ 8.

{¶ 15} The Ohio Supreme Court set forth the sudden medical emergency defense to a motor vehicle personal injury action as follows:

> 1. "Where the driver of an automobile is suddenly stricken by a period of unconsciousness which he has no reason to anticipate and which renders it impossible for him to control the car he is driving, he is not chargeable with negligence as to such lack of control." (*Lehman v. Haynam* [1956], 164 Ohio St. 595, 59 O.O. 5, 133 N.E.2d 97, paragraph two of the syllabus, approved and followed.)

> 2. "Where in an action for injuries arising from a collision of automobiles the defense of the defendant driver is that he was suddenly stricken by a period of unconsciousness, which rendered it impossible for him to control the car he was driving and which he had no reason to anticipate or foresee, the burden of proof as to such defense rests upon such driver." (*Lehman v. Haynam* [1956], 164 Ohio St. 595, 59 O.O. 5, 133 N.E.2d 97, paragraph three of the syllabus, approved and followed.)

*Roman v. Estate of Gobbo*, 99 Ohio St.3d 260, 2003-Ohio-3655, at paragraphs one and two of the syllabus.

{¶ 16} Cases where sudden medical emergency is raised as a defense "are not well suited to resolution by summary judgments or directed verdicts, but must proceed to trial, where it is incumbent upon the factfinder to determine whether the requirements of the defense have been met." *Id.* at ¶ 58. In *Gobbo*, the factual issues to be resolved were "(1) Was Gobbo stricken with a sudden medical emergency, and, if he was, at what point in the sequence of events did it occur? and (2) Should Gobbo's medical past and problems with his

heart have caused him to foresee that he was likely to suffer a heart attack while driving?" *Id.* at ¶ 5. The foreseeability element of the sudden medical emergency requires an inquiry into whether the evidence establishes that the defendant had previous experiences or knowledge that would have warned a reasonably prudent person under the same or similar circumstances of a likelihood of losing consciousness. See Ohio Jury Instructions, CV Section 401.21.

{¶ 17} Boehl's deposition revealed that he was approximately 44 years old on the date of the January accident. He was self-employed in the glass block business. A week before the accident, Boehl suffered a concussion after being assaulted by three men and knocked unconscious. He was treated and released by EMTs. He sought no medical treatment but knew he was concussed because he was a former boxer. He spent the next week at home resting. He felt better by the end of the week and decided to go to his farm in Kentucky. He left home, stopped for coffee, then got on the interstate.

{¶ 18} Boehl began feeling lightheaded while driving on the interstate. He decided he should get off the interstate at the next exit, some five minutes away, to "get some air." He began feeling progressively worse as he continued towards the exit. By the time he was exiting the interstate, Boehl described what he was experiencing as "almost overwhelming."

{¶ 19} Boehl was looking for the first parking lot he could locate, which he found at the Butterbee's restaurant immediately off the exit. Boehl opted to reverse into the parking space at Butterbee's. Boehl did not recall entering the parking space but did recall "going to throw my truck into park." The next thing Boehl recalled was regaining consciousness after impacting the McDonald's restaurant. Boehl thought he "passed out or had a seizure." Boehl was transported to the hospital but released the same day. Later, he had an MRI, because the police would not give him his driver's license back until he did so. "Everything looked okay" from the MRI and Boehl was allowed to drive again. Boehl said that employees

at the hospital thought he had a seizure. Boehl sought no medical treatment as he is "not a big fan of doctors."

{¶ 20} Six or seven years earlier Boehl experienced lightheadedness while driving his vehicle that resulted in him losing consciousness. Boehl thought what he experienced in that incident was a panic attack. That incident resulted in a traffic incident where Boehl impacted another car's bumper. Boehl did not go to the hospital but was treated by EMTs, who released him. Boehl stated that the January accident was "much more severe" than the earlier panic attack.

{¶ 21} After reviewing this evidence in a light most favorable to Roberts, this court concludes that genuine issues of fact remain on the issue of foreseeability, and therefore Boehl is not entitled to summary judgment on the defense of sudden medical emergency.[3] Boehl testified concerning two medical events six or seven years apart, both of which began with lightheadedness, led to unconsciousness, and resulted in a motor vehicle accident. Given the apparent similarity between the two events, this court finds that there are genuine issues for the factfinder as to whether a reasonably prudent person in Boehl's circumstances would have anticipated the accident that would occur several minutes after Boehl decided he needed to exit the interstate.

{¶ 22} The trial court based its conclusion on lack of foreseeability primarily on Dr. Steiman's expert opinion. Dr. Steiman's report states in relevant part:

> **OPINION:** The medical opinions set forth are based on my education, training and experience as well as Mr. Boehl's history, physical examination, and the pain and functional assessment. The medical records were reviewed and taken into consideration. The medical opinions are expressed to a reasonable degree of medical probability and certainty.

---

3. As this issue is dispositive of Boehl's entitlement to summary judgment on the defense of sudden medical emergency, we need not address whether Boehl met his summary judgment burden to demonstrate that he was suddenly stricken by a loss of consciousness. However, for purposes of this opinion we presume that Boehl was rendered unconscious during the January accident.

Mr. Boehl's history, medical record review, and physical exam provide sufficient and credible evidence that the most likely explanation of his episode of unconsciousness was either vasovagal syncope secondary to a beta-adrenergic hypersensitivity, commonly referred to as hyperventilation syncope or panic attack, or an isolated seizure secondary to the recent head trauma. With either etiology, the loss of consciousness was neither anticipated nor expected. Mr. Boehl would not have foreseen he would lose consciousness.

{¶ 23} Expert testimony on an ultimate issue is admissible at trial. *Bostic v. Connor*, 37 Ohio St.3d 144, 148 (1988). However, expert testimony is only necessary where a factual issue is beyond the ordinary, common knowledge and experience of a lay person. *Ramage v. Cent. Ohio Emergency Servs. Inc,* 64 Ohio St.3d 97, 103 (1992).

{¶ 24} The jury instructions on the defense of sudden medical emergency provide the following:

To decide whether [the defendant] had reasonable cause to foresee the possibility of sudden [loss of consciousness] * * * you should consider whether the evidence establishes that he/she had previous experiences or knowledge that would have warned a reasonably (cautious) (careful) (prudent) person under the same or similar circumstances of a likelihood of such [loss of consciousness].

Ohio Jury Instructions, CV Section 401.21.

{¶ 25} The instruction presents jurors with a subjective standard that considers what Boehl – not a neurologist such as Dr. Steiman – would perceive under the circumstances. Although Dr. Steiman is qualified to offer his opinion on that matter, he has no greater insight into Boehl's thoughts in the moments before the accident than a lay person. Thus, the issue of foreseeability necessarily becomes a credibility issue that in a case of this nature must be resolved by a factfinder.

{¶ 26} Notably, Dr. Steiman's report fails to offer any medical explanation for why Boehl would not have foreseen losing consciousness despite the apparent similarity to the earlier accident. This is likely explained by the following excerpt from the report with respect

to what Boehl told the doctor concerning the earlier accident: "*Approximately 10-12 years ago*, he was driving his work truck when he became lightheaded. He bumped a vehicle in front of his. *He cannot recall whether or not he lost consciousness.*" (Emphasis added.)

{¶ 27} Thus, Boehl provided Dr. Steiman with facts that differed in some significant respects from his sworn deposition testimony, i.e., Boehl told Dr. Steiman that nearly twice as much time had elapsed between the two incidents and that he could not recall if he lost consciousness in that earlier accident. Thus, Boehl's deposition testimony conflicts with a factual basis of Dr. Steiman's expert opinion. For these reasons, this court concludes that Dr. Steiman's affidavit did not establish the absence of a genuine issue of fact on the issue of foreseeability.

{¶ 28} The trial court also found that Roberts failed to meet her reciprocal burden under Civ.R. 56(E) to show a genuine issue of fact through contradictory medical testimony. Boehl cites a Sixth District Court of Appeals case where the appeals court concluded that an injured driver failed to counter the defendant's expert's medical opinion that the defendant's sudden medical emergency was unforeseeable. *Duchene v. Finley*, 6th Dist. Lucas No. L-13-1256, 2015-Ohio-387. There, the doctor opined that he had reviewed the defendant's medical history and it contained no medical issues that would have put the defendant at a risk of losing consciousness while operating a motor vehicle. *Id.* at ¶ 3. Moreover, the doctor opined that the loss of consciousness was caused by a disease that was not clinically apparent and that up until the moment that he lost consciousness, the defendant was asymptomatic. *Id.*

{¶ 29} In *Duchene* there is no indication as to whether the defendant's deposition or affidavit were submitted in summary judgment. However, in our case, Boehl's deposition was in the record, and, as discussed above, contradicted facts in Dr. Steiman's report and called into question his expert medical opinion. Therefore, because Dr. Steiman's affidavit did not

establish the absence of a genuine issue of fact on the issue of foreseeability, Robert's had no reciprocal summary judgment burden to meet.

{¶ 30} This court concludes that in a case of sudden medical emergency where, as in this case, the issue of foreseeability is doubtful, the question should be submitted to the jury or factfinder. We therefore reverse the trial court's grant of summary judgment in favor of Boehl and against Roberts. Additionally, we reverse the trial court's grant of summary judgment to Nationwide on Roberts' uninsured/underinsured coverage, as that decision was premised on the underlying decision to grant summary judgment to Boehl. In all other respects, the judgment of the trial court is affirmed.

{¶ 31} Judgment reversed in part, affirmed in part, and remanded for further proceedings.

PIPER and M. POWELL, JJ., concur.