OPINION
{¶ 1} The plaintiff-appellant, Keith Graham ("Keith") appeals the June 30, 2006 final Judgment Entry of the Court of Common Pleas of Allen County, Domestic Relations Division, Ohio.
 {¶ 2} The plaintiff-appellant, Keith, and defendant-appellee, Linda Graham ("Linda") were married on September 24, 2000 in Dayton Ohio and no children were born as issue of the marriage. Prior to the marriage Linda contacted attorney Venessa Guenther and had an antenuptial agreement prepared and Keith was not represented by counsel during the preparation of the antenuptial agreement. The document was executed by both parties on September 23, 2000.
 {¶ 3} In August of 2003, the parties separated and began living apart. On June 29, 2005, Keith filed a Complaint for Divorce. On August 12, 2005, Linda filed an Answer and Counterclaim claiming that the antenuptial agreement was unconscionable and that she should be entitled to receive spousal support. The trial court requested memoranda of law regarding the antenuptial agreement.
 {¶ 4} On May 3, 2006, the matter proceeded to final hearing. On June 16, 2006, the trial court issued a decision finding the antenuptial agreement to be valid, denying Linda spousal support and granting Linda a portion of Keith's 401(K) and railroad retirement benefits. On June 30, 2006, the Judgment Entry — Decree *Page 3 
of Divorce incorporating the trial court's decision was filed. On July 21, 2006, Keith filed his notice of appeal raising the following assignment of error:
 The Trial court erred in granting the Defendant a portion of the Plaintiff's 401(K) and railroad retirement benefits when these items were designated as separate property in the antenuptial agreement.
 {¶ 5} The Ohio Supreme Court has defined an antenuptial agreement as "a contract entered into between a man and a woman in contemplation, and in consideration, of their future marriage whereby the property rights and economic interests of either the prospective wife or husband, or both, are determined and set forth in such instrument." Gross v.Gross (1984), 11 Ohio St.3d 99, 102, 464 N.E.2d 500. The law of contracts generally applies to the interpretation of an antenuptial agreement. Fletcher v. Fletcher, 68 Ohio St.3d 464, 467,628 N.E.2d 1343, citing 2 Williston on Contracts (3 Ed. 1959), Section 270B.
 {¶ 6} Appreciation on separate property during the parties' marriage is generally marital property, although a valid antenuptial agreement can exclude that appreciation. Millstein v. Millstein, 8th Dist. Nos. 79617, 79754, 80184-80188, 80963, 2002-Ohio-4783, at ¶ 98, citing Radcliffe v. Radcliffe (Apr. 27, 1994), Montgomery App. No. 14130. Pension or retirement benefits that accumulate during the marriage are generally considered marital property, subject to division. Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 132, 541 N.E.2d 597. *Page 4 
 {¶ 7} In considering the specific terms of the parties' antenuptial agreement, the parties set forth the definition of "separate property" to provide that:
 The following described property, real and personal, is and shall remain the sole and separate property of KEITH A. GRAHAM, see attached list marked as Exhibit B, any profits or interest derived from these assets after the marriage of the parties shall remain the sole and separate property of Keith A. Graham, as well as any other assets purchased from the sale of existing assets listed in Exhibit B.
Exhibit B provides a list of "personal property" belonging to Keith, including the NFS (Norfork Southern) Railroad Retirement and 401(K) Trip Account.
 {¶ 8} The parties' antenuptial agreement does not define "marital property." Under Ohio's statutory scheme, "marital property" is defined under R.C. 3105.171(A)(3)(a)(i) to include, "[a]ll real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage." Further, an increase in the value of the separate property during the parties' marriage is marital property if that increase was due to the labor, money or in-kind contributions of either spouse.See R.C. 3105.171(A)(3)(a)(iii).
 {¶ 9} When determining whether a trial court correctly classified property as marital or separate, the standard of review is whether that classification is *Page 5 
against the manifest weight of the evidence. Welsh-Pojman v.Pojman, 3rd Dist. No. 3-03-12, 2003-Ohio-6708, at ¶ 10, citingHenderson v. Henderson, Mercer App. No. 10-01-17, 2002-Ohio-2720, ¶ 28. The trial court's judgment must not be reversed as being against the manifest weight of the evidence if the trial court's classification is supported by competent, credible evidence. Id., citing DeWitt v.DeWitt, Marion App. No. 9-02-42, 2003-Ohio-851, ¶ 10. Furthermore, a reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273.
 {¶ 10} In this case, Keith argued that the trial court should come to the conclusion that the antenuptial agreement is valid and enforceable and that the additional contributions to Keith's 401(K) and Railroad Retirement Benefits during the marriage were separate property according to the antenuptial agreement. Specifically, Keith asserts that Linda had the antenuptial agreement drafted by her attorney which she now wishes to claim is unenforceable as to Keith's separate property. Linda alleges that Keith's 401(K) and Railroad Retirement Benefits are clearly marital property and not considered separate property by the antenuptial agreement. Rather, she seeks to divide Keith's 401(K) *Page 6 
and Railroad Retirement Benefits based on what was earned and gathered during the marriage.
 {¶ 11} Upon hearing all the evidence and reading the memoranda, the trial court stated in its decision on June 16, 2006, the following:
 [T]here are some retirement benefits of Keith through his employment. The first is a 401K, which had a value of $3,953.00 at marriage and approximately $19,860.00 at separation. On December 31, 2005 it had a value of $63,155.00.
 During the course of the marriage it appears Keith's contributions were approximately $2,400.00 to $2,500.00 per year and that after separation those contributions were approximately $4,000.00 a year including the company match.
 By removing the premarital value of the 401K from the value at separation and also removing the marital contributions made in 2001, 2002 and 2003, which this Court deems to be approximately $7,500.00, it shows a growth factor during the marriage of $8,407.00. Keith's premarital value is approximately 35% of the total of the premarital value and the contributions for those three years and this Court will apply that percentage to the growth incurred during that period of time, which shows his separate growth to be $2,942.25 and the marital growth to be $5,464.55.
 This gives a total of $6,895.00 to Keith as his separate growth upon that interest at the time of separation.
 The Court then will take the most recent statement of $63,155.00 and reduce that by the additional contributions for 2004 and 2005, which is approximately $8,000.00 showing a remaining balance of $55,155.00. By subtracting the value at separation, it appears there was a $35,295.00 growth since the separation minus the contribution since the separation. *Page 7 
 The Plaintiff's separate value at marriage and growth during marriage upon that amount, as well as his post separation contributions, which are his separate property, totals $14,895.00. This would be approximately 24% of the total of the $63,155.00.
 By applying this percentage to the growth since the separation, this would be an additional $8,471.00 of separate growth of Keith's moneys since the separation of the parties.
 Therefore, the total of the Plaintiff's separate value in the plan at marriage of $3,953.00 plus the Plaintiff's separate growth during the marriage up until separation of $2,942.00, plus the Plaintiff's post separation contributions of approximately $8,000.00 and the Plaintiff's post separation growth upon his separate moneys of $8,471.00 equals $23,366.00 for the Plaintiff's total separate interest in the plan as of the end of 2005.
 The remaining $39,789.00 is the marital value of the account and the Court would order that Linda will be entitled to $19,894.50 of that 401K, which shall be secured by an appropriate retirement domestic relations order * * *.
 As to the Defined Benefit Plan, the Court has had some problems in making a determination of the value. First of all Plaintiff's Exhibit 11 indicates the Tier One Railroad retirement benefit component of $1,402.00 and the Tier Two supplemental annuity at $550.00, however it indicates a total monthly railroad benefit of $2,668.00 which is obviously not the $1,952.00 which would be the total of the Tier One and Tier Two.
 Plaintiff's Exhibit Eight outlines those benefits in existence as of September 1, 2003, very close to the separation of the parties, and indicates a Tier One benefit of $1,623.00 and a Tier Two benefit of $782.21, which is the total of $2,405.21 represented on that exhibit. *Page 8 
 On Plaintiff's Exhibit Ten there is an indication of the benefits available for December 31, 2005 and the Tier One and Tier Two benefits on that exhibit do indeed total up to the $2,668.34. The Court therefore believes that the Plaintiff's Exhibit 11 is merely an error in the addition.
 It also is established by the exhibits that Keith was employed approximately twenty-nine years prior to the separation of these parties, with only three of those years being during the marriage of the parties.
 Therefore in consideration of the time of the marriage and taking into consideration all of the retirement benefits of the parties including any social security interest as well as both Tier One and Tier Two benefits, noting that Tier One benefits are not subject to division, the Court orders that Linda Graham shall be entitled to receive $124.41 per month from the retirement benefits of Keith A. Graham upon his retirement. She shall also receive any cost of living raises associated with this amount and the same shall be included and accomplished by an appropriate Qualified Domestic Relations Order, or the Railroad Retirement Board prescribed alternative to accomplish the same.
 {¶ 12} Accordingly, the trial court calculated the marital value of the retirement benefits of Keith including the 401(K) and the Railroad Retirement Benefits. Specifically, the trial court recognized that the antenuptial agreement did establish both as separate property; however, it established that the contributions made during the marriage and the marital growth were to be divided as marital property. As to the 401(K), the trial court calculated the contributions both prior to the marriage and after the separation and the growth on that amount as separate property. The trial court calculated that the marital property consisted of the contributions during 2001, 2002 and 2003 and the growth on that amount *Page 9 
from 2001 until 2005. The trial court then took that value and divided that amount in half as marital property between Keith and Linda. The trial court also established that the Railroad Retirement Benefits in Tier Two were divisible with Linda as marital property for the time that she was married to Keith. Therefore, the trial court calculated that Linda was entitled to $124.41 per month from the Railroad Retirement Benefits in Tier Two.
 {¶ 13} Based on the evidence presented, we conclude that the trial court's decision establishing that Linda was entitled to a portion of Keith's 401(K) and his Railroad Retirement Benefits was supported by competent, credible evidence. Therefore, we find that the trial court did not err in finding that additional contributions to Keith's 401(K) and Railroad Retirement Benefits during the parties' marriage was marital property outside the provisions of the parties' antenuptial agreement. Accordingly, Keith's sole assignment of error is overruled.
 {¶ 14} For these reasons, the June 30, 2006 final Judgment Entry of the Court of Common Pleas of Allen County, Domestic Relations Division, Ohio is affirmed.
Judgment affirmed.
 ROGERS, P.J., and WILLAMOWSKI, J., concur. *Page 1