[Cite as *Durfor v. W. Mansfield Conservation Club*, 2022-Ohio-416.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

CRISTEN DURFOR, ET AL.,

        CASE NO. 8-21-26

    PLAINTIFFS-APPELLANTS,

    v.

WEST MANSFIELD CONSERVATION
CLUB, ET AL.,                   O P I N I O N

    DEFENDANTS-APPELLEES.

---

**Appeal from Logan County Common Pleas Court
Trial Court No. CV 19 06 0201**

**Judgment Affirmed**

**Date of Decision:  February 14, 2022**

---

APPEARANCES:

    *Daniel N. Abraham* **for Appellants**

    *Dalton J. Smith* **for Appellee, West Mansfield Conservation Club**

**WILLAMOWSKI, J.**

{¶1} Plaintiff-appellant Cristen L. Durfor ("Durfor")—individually and as parent, natural guardian, and next friend of her minor child, J.S.—appeals the judgment of the Logan County Court of Common Pleas, alleging that the trial court erred in granting summary judgment for the Defendant-Appellee West Mansfield Conservation Club ("the WMCC"). For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} For a number of years, the WMCC has allowed the community to use its property for an annual Fourth of July celebration. Kerns Depo. 13, 14, 19. Doc. 139. The WMCC does not charge a fee for members of the public to enter the premises; enter into a contract with the Village of West Mansfield; or receive compensation for opening their premises. Doc. 139. *See* Durfor Depo. 46. At the 2017 celebration, the WMCC made money from a fish fry but did not require attendees to purchase a meal to participate in the event. Doc. 139.

{¶3} The WMCC does not organize this event but describes this celebration as "a community effort." Doc. 139. Each year, members of the community bring and set up games and activities on the WMCC property for the attendees to enjoy. Kerns Depo. 14-15. For this reason, the event has had different activities every year. *Id*. at 16. On July 3, 2017, the mayor of West Mansfield, Kimberly K. Kerns

("Kimberly"), and her husband, Danny R. Kerns (collectively "the Kerns"), brought a dunk tank onto the WMCC's premises for use at the celebration. *Id.* at 42, 50.

**{¶4}** On July 4, 2017, Durfor and her daughter, J.S., went to this event. J.S. Depo. 17. Durfor Depo. 12. They had never attended one of the Fourth of July celebrations at the WMCC and had learned about this event through flyers that had been hung up around town. Durfor Depo. 14. In the morning, Durfor and J.S. participated in a softball game at the WMCC before returning to their home for a cookout. J.S. Depo. 37. Durfor Depo. 17.

**{¶5}** In the afternoon, J.S. returned to the WMCC with several other people. J.S. Depo. 38, 41. Durfor remained at her house to clean up after the cookout. Durfor Depo. 18. J.S. Depo. 54. At the WMCC, J.S. saw a number of kids using the dunk tank and decided to participate. J.S. Depo. 38, 41. She climbed up a ladder to the top of the tank and then got dunked. *Id.* at 44. She then got out of the dunk tank and got onto the ladder to climb down to the ground. *Id.* J.S. affirmed that she was "facing outward" as she went down the ladder. *Id.* at 45.

**{¶6}** As she climbed down, J.S. slipped and "landed on an exposed piece of metal believed to be a hitch or leveling crank handle and sustained perineal trauma * * *." Doc. 1. *See* J.S. Depo. 45, 49-50. After the fall, J.S. blacked out. J.S. Depo. 49. When she regained consciousness, she crawled over to someone and asked them to call 911. *Id.* at 50-51. An ambulance arrived at the WMCC and transported J.S.

to the hospital. Durfor Depo. 24-25. On July 5, 2017, J.S. underwent a surgical procedure to address the injury that she had sustained from the fall. Doc. 1.

{¶7} On June 27, 2019, Durfor filed a complaint that named the WMCC and the Kerns as defendants. Doc. 1. This complaint raised two claims of negligence and one claim of premises liability. Doc. 1. On November 23, 2020, the WMCC filed a motion for summary judgment. Doc. 139. The WMCC argued (1) that it only had a duty not to cause willful or wanton injury to J.S. because she was a licensee and (2) that it had recreational user immunity under R.C. 1533.181. Doc. 139.

{¶8} On February 1, 2021, the trial court granted the WMCC's motion for summary judgment, finding that J.S. was a licensee on the WMCC's premises and that the WMCC had immunity under R.C. 1533.181. Doc. 166. On May 3, 2021, a notice was filed that indicated that Durfor and the Kerns had reached a settlement agreement. Doc. 180. Durfor then filed a notice of voluntary dismissal for the Kerns. Doc. 186. On July 6, 2021, the trial court issued a judgment entry, stating that all claims against all parties had been resolved through the settlement agreement and the grant of the WMCC's motion for summary judgment. Doc. 187.

{¶9} On August 2, 2021, Durfor filed her notice of appeal. Doc. 195. On appeal, she raises the following two assignments of error:

**First Assignment of Error**

**The trial court erred when it held that [J.S.] was a licensee on the premises owned by WMCC.**

**Second Assignment of Error**

**The trial court erred when it found WMCC immune from liability under R.C. 1533.181(A) when [J.S.] was not a recreational user.**

*First Assignment of Error*

{¶10} Durfor argues J.S. was an invitee on the WMCC's premises and that the trial court erred in determining that she was a licensee. She then asserts that the trial court erred in granting summary judgment to the WMCC on this basis.

Legal Standard

{¶11} "Appellate courts consider a summary judgment order under a de novo standard of review." *Schmidt Machine Company v. Swetland*, 3d Dist. Wyandot No. 16-20-07, 2021-Ohio-1236, ¶ 23, citing *James B. Nutter & Co. v. Estate of Neifer*, 3d Dist. Hancock No. 5-16-20, 2016-Ohio-7641, ¶ 5. Under Civ.R. 56,

> **[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law * * *. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.**

Case No. 8-21-26

Civ.R. 56(C). Accordingly, summary judgment is to be granted

> **only when it is clear '(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.'**

*Beair v. Management & Training Corp.*, 3d Dist. Marion No. 9-21-07, 2021-Ohio-4110, ¶ 15, quoting *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47 (1978).

{¶12} Initially, "[t]he party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 370, 1998-Ohio-389, 696 N.E.2d 201, 204 (1998). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Neal v. Treglia*, 2019-Ohio-3609, 144 N.E.3d 1045, ¶ 12 (3d Dist.), quoting *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13.

{¶13} If the moving party carries this initial burden, "[t]he burden then shifts to the party opposing the summary judgment." *Bates Recycling, Inc. v. Conaway*, 2018-Ohio-5056, 126 N.E.3d 341, ¶ 11 (3d Dist.), quoting *Middleton v. Holbrook*, 3d Dist. Marion No. 9-15-47, 2016-Ohio-3387, ¶ 8. "In order to defeat summary judgment, the nonmoving party may not rely on mere denials but 'must set forth

-6-

specific facts showing that there is a genuine issue for trial.'" *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10, quoting Civ.R. 56(E).

{¶14} "[B]ecause summary judgment is a procedural device to terminate litigation, it must be awarded with caution." *Williams v. ALPLA, Inc.*, 2017-Ohio-4217, 92 N.E.3d 256 (3d Dist.), quoting *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138 (1992). "The court must thus construe all evidence and resolve all doubts in favor of the non-moving party * * *." *Webster v. Shaw*, 2016-Ohio-1484, 63 N.E.3d 677, ¶ 8 (3d Dist.).

{¶15} Further, "[t]o prevail in a negligence action, a plaintiff must demonstrate that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused the plaintiff to be injured." *Moyer v. McClelland J. Brown Living Trust*, 2019-Ohio-825, 124 N.E.3d 853, ¶ 6 (3d Dist.), quoting *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 10.

{¶16} In negligence cases alleging premises liability, "the status of the person who enters upon the land of another * * * define[s] the scope of the legal duty that the landowner owes the entrant." *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315, 1996-Ohio-137, 662 N.E.2d 287, 292 (1996). "Under Ohio law, an owner's duty of care depends on whether the injured person is an invitee, a licensee, or a trespasser." *Heffern v. Univ. of Cincinnati Hosp.*, 142

Ohio App.3d 44, 52, 753 N.E.2d 951, 957 (10th Dist. 2001). *See Carnes, supra*, at ¶ 14.

{¶17} A trespasser is "[o]ne who enters upon the land of another without invitation or permission purely for his own purposes or convenience * * *." *Ard v. Fawley*, 135 Ohio App.3d 566, 571, 1999-Ohio-921, 735 N.E.2d 14, 17 (3d Dist.), citing *McKinney v. Hartz & Restle Realtors, Inc.*, 31 Ohio St.3d 244, 246, 510 N.E.2d 386, 388-389 (1987). As a general matter, "a landowner owes no duty to a * * * trespasser except to refrain from willful, wanton, or reckless conduct that is likely to injure him." *Williams v. Cook*, 132 Ohio App.3d 444, 449, 725 N.E.2d 339, 343 (3d Dist. 1999), citing *Gladon*, *supra*, at 317.

{¶18} A licensee is one "who enters the premises of another by permission or acquiescence, for his own pleasure or benefit, and not by invitation." *Williams* at 449, quoting *Provencher v. Ohio Dept. of Transp.*, 49 Ohio St.3d 265, 266, 551 N.E.2d 1257, 1258 (1990). "A licensee takes his license subject to its attendant perils and risks." *Light v. Ohio University*, 28 Ohio St.3d 66, 68 502 N.E.2d 611, 613 (1986). As with the trespasser, a landowner generally "owes the licensee no duty except to refrain from wantonly or willfully causing injury" and "is not liable for ordinary negligence * * *." *Id.*

{¶19} An invitee is one "who rightfully come[s] upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner." *Moyer, supra*, at ¶ 6 quoting *Gladon, supra*, at 315. Thus, "[t]he

-8-

distinction between an invitee and a licensee is dependent on whether the guest enters the land for personal benefit or for the benefit of the owner." *Heffern, supra*, at 52. In contrast to the duty owed to a trespasser or a licensee, "[a] landowner owes a duty to an invitee to exercise ordinary care for the invitee's safety and protection." *Gladon, supra*, at 317.

{¶20} "The economic-or tangible-benefit test has long been recognized by the Supreme Court of Ohio to distinguish the status of an invitee from that of a licensee." *Bilodeau v. Jordan*, 1st Dist. Hamilton No. C-020496, 2003-Ohio-1540, ¶ 10. Under this test, "in order to prove that he is an invitee, a plaintiff must establish that the premises owner received a tangible or economic benefit from his visit." *Heffern, supra,* at 52. "[T]he type of benefit conferred by an invitee upon the owner or occupier of land must take *a tangible or economic form*." (Emphasis sic.) *Id.*, citing *Provencher*, *supra*, at 1258-1260. Accordingly, "[a]n invitation alone does not bestow the status of an invitee." *Sutyak v. Warren-Trumbull County Public Library*, 11th Dist. Trumbull No. 92-T-4754, 1993 WL 150488, *2 (Mar. 26, 1993), citing *Provencher, supra,* at 1259 (rejecting the public invitee standard that does not "require[] that some type of benefit * * * be conferred on the owner or occupier before a visitor can be considered an invitee").

## Legal Analysis

{¶21} In its judgment entry, the trial court determined that J.S. "was a licensee, not a business invitee." Doc. 166. Against this conclusion, Dufor argues

that J.S. was not a licensee because (1) the event at the WMCC was advertised by flyers that were posted around town; (2) the WMCC made some money from a fish fry that was held at the event; and (3) the WMCC stood to benefit from people seeing their premises. We will consider each of her three main arguments in turn.

{¶22} First, Durfor testified that she had become aware of the July Fourth Celebration from flyers that had been posted around the village. Durfor Depo. 14. Kimberly had also seen these flyers. Kerns Depo. 22. However, in an affidavit, the President of the WMCC, Jim Shelton ("Shelton"), affirmed that the WMCC did not "create flyers for the event." Doc. 139, Affidavit. Further, the record contains no information that establishes the source of these flyers as neither Durfor nor Kimberly were able to identify who had produced or circulated these flyers. Durfor Depo. 14. Kerns Depo. 142.

{¶23} Kimberly explained that she was the mayor of West Mansfield during the Fourth of July Celebration in 2017 and that she did not consult with anyone from the WMCC about logistics, such as the timing of or activities at the event. Kerns Depo. 11, 110-111. She was not aware of any "formal request" that had been made to use the WMCC's premises for the celebration and said that the event happens "just from reputation it's always been July 4th at the club." *Id.* at 108.

{¶24} Kimberly also stated that "[t]here's really no one in charge" of the celebration and that the community puts this event together. Kerns Depo. 108. She said that people in the community would mention the Fourth of July Celebration in

the different area organizations in which they were members. *Id.* at 110. For example, she mentioned seeing a member of her church stand up and invite the congregants. *Id.* Kimberly also observed a similar invitation at a Lions Club breakfast. *Id.*

{¶25} Durfor asserts that the flyers constituted an invitation from the WMCC to the public. Appellant's Brief, 9-10. However, she has not established any connection between the WMCC and the flyers. Further, we also note that, in *Honek v. Chidsey*, the Eighth District considered a situation in which an attendee was injured at a free, outdoor concert that was held on city property. *Honek v. Chidsey*, 2021-Ohio-3816, --- N.E.3d ---, ¶ 25, 45 (8th Dist.). Even though "the city promoted the event to the public to attend the city's summer concert series," the Eighth District concluded that the injured party was a licensee because there was "no evidence that the city obtained any economic or tangible benefit from the attendees." *Id.* at ¶ 25.

{¶26} Second, Durfor argues that the WMCC received an economic benefit from the celebration because they sold food at a fish fry during part of the event. Shelton's affidavit does state that the "only money made by the [WMCC] * * * on July 4, 2017 was from a fish fry." Doc. 139, Affidavit. However, he also affirmed that "[m]embers of the public were not required to purchase a meal at the * * * fish fry in order to gain access to the property * * *"; that the WMCC "had no written agreement with the village"; and that the WMCC "did not receive any form of

-11-

compensation in exchange for the use of its property." Doc. 139, Affidavit. *See Light, supra*, at 68.

{¶27} Kimberly confirmed that the village did not have a contract with the WMCC or pay the WMCC for use of its premises. Kerns Depo. 109. She also affirmed that the July Fourth Celebration "was not some event they [the WMCC] hosted because they made money off of it" and that she was not aware of "any revenue generating aspect of this" event for the WMCC. *Id.* at 109. *See Light, supra*, at 68. Kimberly and Durfor also testified that attendees did not need to purchase a ticket or pay an admission fee to enter the WMCC premises for the celebration. Kerns Depo. 109. Durfor Depo. 46. *See Light, supra*, at 68.

{¶28} Further, Shelton affirmed that the WMCC "held its grounds open to the public at large for a July 4th celebration" but "was not in charge of the July 4th celebration * * *" and "did not * * * arrange for activities or items to [be] brought to the event * * *." Doc. 139, Affidavit. Kimberly explained that "the community steps up" to organize the July Fourth Celebration. Kerns Depo. 107. She affirmed that, for this event, "people just bring things on an ad hoc basis and no planning, they just bring it." *Id.* at 26. She also stated that "whoever has games or activities * * * can take them" and "just lay them all across the yard." *Id.* at 15.

{¶29} Shelton and Kimberly both affirmed that the WMCC was not consulted before the dunk tank was brought onto its premises. Doc. 139, Affidavit. Kerns Depo. 111. J.S. testified that, at the time she used the dunk tank, no adult was

around for supervision and affirmed that "there was no organization in terms of who was going to throw the ball, who was going to get dunked[.]" J.S. Depo. 38-39, 41. Durfor also testified that she was not aware of any person affiliated with the WMCC who was supervising the dunk tank. Durfor Depo. 45.

{¶30} Further, the record indicates that the WMCC did not have a role in other, larger activities at the celebration. Kimberly indicated that the fire department pays for a company to stage a fireworks display at the celebration with funds that come from community "donations and fundraisers." Kerns Depo. 92-94. Similarly, J.S. testified that, on the morning of the celebration, she and Durfor participated in a softball event on the WMCC grounds. J.S. Depo. 31. She said that this game was organized by the coaches in her softball league and that she was not aware of any other person or entity that organized this event. *Id*. at 31-32. Thus, the record indicates that the fish fry was one of many activities that occurred at the celebration.

{¶31} However, there is no evidence that suggests that J.S. went to the fish fry, purchased a meal, or even entered the WMCC's premises to go to the fish fry. *See Lawson v. Scinto*, 10th Dist. Franklin No. 08AP-1125, 2009-Ohio-2659, ¶ 11 (holding a person was a licensee where "there [was] no evidence that she ever intended to patronize any of the businesses serviced by the parking lot where she fell"); *Mostyn v. CKE Restaurants, Inc.*, 6th Dist. Williams No. WM-08-018, 2009-Ohio-2934, ¶ 5, 18 (holding that a person who slipped at a rest area with restaurants

was a licensee because she entered solely to use the restroom "and had not entered the area of the incident for any business purpose beneficial to appellee").

{¶32} Third, Durfor argues that the WMCC benefits from the celebration because members of the community are "familiarize[d] * * * with what [the] WMCC has to offer" and that this "*could* increase membership in [the] WMCC * * *." (Emphasis added.) Appellant's Brief, 9. *See Honek, supra*, at ¶ 25 (holding that "the focus on the duty owed is the relationship between the injured party and the property owner").

{¶33} However, in *Roesch v. Warren Distrib./Fleet Eng. Research*, the plaintiff went to a service station to fill his tires with an air pump that "was clearly marked with a sign stating 'Free Air.'" *Roesch v. Warren Distrib./Fleet Eng. Research*, 146 Ohio App.3d 648, 2000-Ohio-2694, 767 N.E.3d 1187, ¶ 2-3 (8th Dist.). The plaintiff was injured on the premises and sued the service station. *Id*. He argued

> **that the air pump was located on Clark Oil's premises for the purpose of attracting customers who would later purchase gas or sundries such as gum or cigarettes. He therefore claim[ed] that he qualifie[d] as a business invitee because he [was] a prospective paying customer.**

*Id*. at ¶ 11. But the plaintiff "admit[ed] * * * that he had never made any purchases of any kind at the Clark Oil station and that he never had any intention of making any purchases, including the day he was injured." *Id*. at ¶ 12, 22. He also did not produce any evidence that the service station "provided * * * a free air pump or

-14-

compressor * * * to attract customers in the hopes that the public would do business in connection with receiving free air." *Id.* at ¶ 24. Based on these facts, the Eighth District concluded that the plaintiff was a licensee. *Id.* at ¶ 28.

{¶34} In the case presently before this Court, Durfor has not offered any evidence that the WMCC opened its premises for the purported benefit alleged in her brief. More importantly, Durfor has not identified any evidence that would suggest that the WMCC "received a tangible or economic benefit from [J.S.'s] * * * visit." *Madison v. Woodlawn Cemetery Assn.*, 6th Dist. Lucas No. L-10-1131, 2010-Ohio-5650, ¶ 13. *See Provencher, supra*, at 268 (emphasizing "the benefit received by the party" rather than "what purpose the land was held open for" in determining the entrant's legal status"); *Yonut v. Salemi*, 10th Dist. Franklin No. 05AP-1094, 2006-Ohio-2744, ¶ 11-12.

{¶35} However, when asked why she went to the celebration at the WMCC, J.S. said, "We were just going to go down there and *have fun*." (Emphasis added.) J.S. Depo. 17. Further, on the morning of the celebration, J.S. participated in a softball game at the WMCC. *Id.* at 31. When she returned to the celebration in the afternoon, she testified that she and her friends "seen [sic] the dunk tank and we said that looks fun." *Id.* at 38. These facts indicate that J.S. entered the WMCC's premises to enjoy the activities organized by the community "for [her] personal benefit * * *." *Heffern, supra*, at 52. *See Honek, supra*, at ¶ 25.

{¶36} In the absence of evidence that J.S. entered the WMCC's premises "for some purpose that [was] * * * beneficial to the owner[s]," Durfor cannot establish that J.S. was an invitee. *Heffern, supra*, at 52. Having examined the evidence in the record, we conclude that the trial court did not err in determining that J.S. was a licensee at the celebration. Doc. 166. Thus, in this case, the WMCC owed J.S. "no duty except to refrain from wantonly or willfully causing injury." *Light, supra,* at 68 ("A licensee takes his license subject to its attendant perils and risks.").

{¶37} However, Durfor has not alleged that the WMCC engaged in any willful or wanton conduct. *Light, supra*, at 68-69. Further, the record contains no evidence that indicates the WMCC acted in such a manner. *Id.* For this reason, the trial court did not err in granting the WMCC's motion for summary judgment. As such, Durfor's first assignment of error is overruled.

*Second Assignment of Error*

{¶38} Durfor argues that the trial court erred in determining that J.S. was a recreational user of the premises owned by the WMCC and that her claims were, therefore, barred under the recreational immunity statute in R.C. 1533.181(A).

Legal Standard

{¶39} Appellate courts are to "decide each assignment of error" raised on appeal "unless an assignment of error is made moot by a ruling on another assignment of error * * *." App.R. 12(A)(1)(c). An issue is moot when it

-16-

"involve[s] no actual genuine, live controversy, the decision of which can definitely affect existing legal relations." *Culver v. City of Warren*, 84 Ohio App. 373, 83 N.E.2d 82 (7th Dist. 1948), quoting Borchard, Declaratory Judgments, at 35 (2d Ed. 1941). "Put differently, an assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court." *Sullinger v. Reed*, 2021-Ohio-2872, 178 N.E.3d 29, ¶ 52 (3d Dist.), quoting *State v. Gideon*, 165 Ohio St.3d 156, 2020-Ohio-6961, 176 N.E.3d 720, ¶ 26.

Legal Analysis

{¶40} In this case, the trial court offered two bases for its decision to grant summary judgment to the WMCC: (1) J.S. was a licensee on the WMCC property and (2) J.S. was a recreational user on the WMCC's property. Doc. 166. Either one of these two bases would provide sufficient grounds for a grant of summary judgment to the WMCC. *See Light, supra*, at 67-68, 69. Since we determined that the trial court did not err in concluding that J.S. was a licensee under the first assignment of error, we have already determined that the trial court had a sufficient legal basis to grant the WMCC's motion for summary judgment. Thus, the question of whether J.S. was also a recreational user is moot. As such, we decline to address the issues raised in Durfor's second assignment of error pursuant to App.R. 12(A)(1)(c).

-17-

*Conclusion*

**{¶41}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of Logan County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**MILLER and SHAW, J.J., concur.**

**/hls**