[Cite as *Feasby v. Garza*, 2025-Ohio-74.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PAULDING COUNTY

TIMOTHY A. FEASBY, ET AL.,

    PLAINTIFFS-APPELLANTS,

CASE NO. 11-24-04

  v.

JOSEPH GARZA, ET AL.,

O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Paulding County Common Pleas Court
Trial Court No. CI 22 211

**Judgment Affirmed**

**Date of Decision:  January 13, 2025**

APPEARANCES:

    *John E. Hatcher* **for Appellant**

    *Timothy C. Holtsberry* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Plaintiffs-appellants Timothy A. Feasby and Rhonda D. Feasby (collectively "the Feasbys") appeal the judgment of the Paulding County Court of Common Pleas, arguing that the trial court erred in granting summary judgment in favor of defendants-appellees Joseph M. Garza and Karen S. Garza (collectively "the Garzas"). For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} In 2012, the Feasbys purchased a property that was adjacent to where the Garzas had lived since 2009 in Cecil, Ohio. On December 30, 2021, the Feasbys' attorney sent a letter to inform the Garzas that they were going to build a fence along the boundary line between their properties. The letter stated that provisions in Chapter 971 of the Ohio Revised Code permitted the Feasbys to cut down brush or foliage along the property line and to enter the Garzas' property in the process of constructing this fence.

{¶3} On January 13, 2022, the Garzas' attorney sent a letter to the Feasbys that stated R.C. 971.01, *et seq.*, was not applicable and that the Garzas would seek compensation for any foliage that was removed from their property. After erecting a fence along their property line with the Garzas, the Feasbys sought reimbursement from the Garzas for a portion of the costs of constructing this improvement. The

Feasbys asserted that they were entitled to this payment from the Garzas under Chapter 971 of the Ohio Revised Code.

{¶4} On December 22, 2022, the Feasbys filed a complaint against the Garzas that raised three claims. The first claim alleged that R.C. 971.06 required the Garzas to contribute $5,398.27 to cover the costs of constructing the partition fence.[1] The second claim alleged that R.C. 971.08(B) gave the Feasbys the right to enter onto the Garzas' property to construct the partition fence and that the Garzas interfered with the exercise of this right. The final claim alleged that the Garzas had made topographical changes to their land that purportedly affected the drainage on the Feasbys' property and resulted in damages.

{¶5} With their answer, the Garzas asserted two counterclaims for trespass. The Garzas alleged that the Feasbys committed trespass while replacing a drainage tile that ran across the Garzas' property in 2021 and in the process of constructing the fence in 2022. On January 19, 2024, the Garzas filed a motion for summary judgment, arguing that Chapter 971 of the Ohio Revised Code was not applicable to this case. They also argued that they had not altered the topography of their land since 2009 but noted that the Feasbys had installed a large pond on their land in 2021.

---

[1] In their complaint, the Feasbys cited R.C. 971.071 as the basis of their first claim. However, in an amended complaint filed on June 16, 2023, they cited R.C. 971.06 as the basis of their first claim.

{¶6} On May 2, 2024, the trial court granted the Garzas' motion for summary judgment as to all three of the claims asserted by the Feasbys. The trial court concluded that R.C. 971.01, *et seq.*, did not govern this case because this provision expressly states that it does not apply to "adjoining properties that are laid out into lots outside of municipal corporations." (Doc. 54), quoting R.C. 971.03(B). The trial court also found that the Feasbys did not identify any evidence that could establish that the Garzas made topographical changes to their land after they (the Feasbys) had moved onto the adjoining property in 2012.[2]

{¶7} The Feasbys filed their notice of appeal on May 10, 2024. On appeal, they raise the following two assignments of error:

### First Assignment of Error

**The Court erred in granting Appellee's Motion for Summary Judgment by finding that ORC 971 did not apply to the Appellants and Appellees properties because they were 'laid out into lots.'**

### Second Assignment of Error

**The Court erred in granting Appellees Motion for Summary Judgment on the issue that Appellees did not make changes to their topography that cause[d] Appellants damage.**

---

[2] The Feasbys also filed a motion for summary judgment. However, the trial court denied the Feasbys motion, finding that the trespass claims raised by the Garzas presented genuine issues of material fact.

*First Assignment of Error*

**{¶8}** The Feasbys argue that the trial court erred in concluding that R.C. 971.01, *et seq.*, is inapplicable to this case.

Standard of Review

**{¶9}** Appellate courts review an order granting summary judgment de novo. *LVNV Funding LLC v. Culgan*, 2023-Ohio-4706, ¶ 5 (3d Dist.). Under Civ.R. 56, a motion for summary judgment may be granted where no genuine issue of material fact exists for trial; the moving party is entitled to judgment as a matter of law; and reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Williams v. ALPLA, Inc*., 2017-Ohio-4217, ¶ 5 (3d Dist.).

**{¶10}** In making a motion for summary judgment, the moving party bears the initial burden of demonstrating that no genuine issue of material fact exists for trial and that it is, therefore, entitled to judgment as a matter of law. *James B. Nutter & Co. v. Estate of Neifer*, 2016-Ohio-7641, ¶ 5 (3d Dist.). The moving party need not produce evidence to carry this burden but is required to identify the materials in the record that indicate summary judgment is appropriate. *Kent v. Motorists Mutual Insurance Company*, 2022-Ohio-1136, ¶ 8 (3d Dist.).

**{¶11}** If the moving party carries its initial burden, the burden then shifts to the non-moving party to establish that a dispute over a genuine issue of material fact exists for trial. *Hall v. Kosei St. Marys Corporation*, 2023-Ohio-2021, ¶ 6 (3d Dist.). To defeat the motion for summary judgment, the non-moving party must do more

than issue mere denials but must identify specific facts that establish its position. *Durfor v. West Mansfield Conservation Club*, 2022-Ohio-416, ¶ 13 (3d Dist.).

**{¶12}** Since an award of summary judgment can terminate the litigation, trial courts should grant motions for summary judgment with caution. *Beair v. Management & Training Corp.*, 2021-Ohio-4110, ¶ 18 (3d Dist.). Accordingly, courts must resolve any doubts and construe all the evidence in favor of the non-moving party. *Durnell's RV Sales Inc. v. Beckler*, 2023-Ohio-3565, ¶ 29 (3d Dist.).

Legal Standard

**{¶13}** Title IX of the Ohio Revised Code contains measures pertaining to agriculture, animals, and fences. Chapter 971 addresses the installation, maintenance, and construction costs of partition fences on properties that are subject to this provision. R.C. 971.03 states that

[t]his chapter does not apply to any of the following:

(A) The enclosure of lots in municipal corporations;

(B) *The enclosure of adjoining properties that are laid out into lots outside of municipal corporations*;

(C) Fences that are required to be constructed by persons or corporations owning, controlling, or managing a railroad pursuant to Chapter 4959. of the Revised Code.

(Emphasis added.) R.C. 971.03.

Legal Analysis

**{¶14}** In their complaint, the Feasbys raised two claims based upon Chapter 971 of the Ohio Revised Code. However, the trial court concluded that, pursuant to R.C. 971.03(B), this code section was not applicable to this case because the Garzas and the Feasbys owned "adjoining properties that are laid out into lots outside of municipal corporations." R.C. 971.03(B). On appeal, the Feasbys argue that this conclusion is not consistent with the Ohio Supreme Court's decision in *Glass v. Dryden*, 18 Ohio St.2d 149 (1969) and that the properties at issue do not fit within the the definition of "subdivision" in R.C. 711.001(B)(1).

**{¶15}** In *Glass*, Cooper and Glass owned adjoining properties in an unincorporated territory. *Glass* at 149-150. Glass had been "vexed by damage from her adjoining owner's cattle straying onto her premises." *Id*. at 150. Cooper wanted to build a partition fence along their property line and sought to have Glass pay for a portion of the costs. *Id*. In response, Glass argued that her property should be considered as having been "laid out into lots" within the meaning of R.C. 971.03(B) because she intended to "develop a housing project on her land." *Id*. at 152-153.

**{¶16}** In evaluating this argument, the Ohio Supreme Court indicated that land could be laid out into lots through the creation of a housing subdivision. *Glass* at 152-153. But deciding whether Glass's land fell within the meaning of R.C. 971.03(B) required a determination as to when the property set aside for a housing subdivision became "laid out into lots." R.C. 971.03(B). The Ohio Supreme Court

-7-

indicated that property set aside for a housing subdivision reached the point of being laid out into lots within the meaning of R.C. 971.03(B) when the statutory process for establishing a housing subdivision, as set forth in R.C. 711.001, *et seq.*, had been completed. *Glass* at 152-153.

{¶17} The Ohio Supreme Court considered the circumstances surrounding the property that Glass had purportedly set aside for a housing subdivision. However, Glass's land had not been "surveyed nor in fact subdivided into lots * * *." *Glass* at 153. Based on the facts in the record, the Ohio Supreme Court concluded that she was not "committed to this project." *Id.* Glass's vague intention to create a housing subdivision at some point in the future was not sufficient to bring her property within the exemption set forth in R.C. 971.03(B) because

> [l]and cannot be 'laid out into lots' unless and until it has been surveyed, platted, and approved by the board of county commissioners or a planning commission in conformity with those statutes.

*Id.*, quoting R.C. 971.03(B). In other words, Glass's land could not be considered to have been laid out into lots by virtue of being a housing subdivision when she had not even begun the statutory process for establishing a housing subdivision. Thus, her property was subject to Chapter 971 of the Ohio Revised Code. *Glass* at 153.

{¶18} In the appeal before us, the Feasbys point out that the "lots in question do not meet the definition of a subdivision set out in ORC 711.001(B)(1)."

(Appellant's Brief, 7). Since the Garzas' property was not a part of a platted subdivision that was approved by a planning commission or the county commissioners in compliance with R.C. 711.001, *et seq.*, the Feasbys argue that the Garzas' property was not "laid out into lots" under the rule set forth in *Glass v. Dryden*, 18 Ohio St.2d 149, at 152-153.[3] Thus, the Feasbys assert R.C. 971.01, *et seq.* governs this case.

{¶19} However, while *Glass* states that a property *can* be laid out into lots through the creation of a housing subdivision in compliance with the requirements in R.C. 711.001, *et seq.*, it does not state that the creation of a housing subdivision is the *only* way for a property to be laid out into lots. In the case presently before us, the Garzas are not arguing that their land has been laid out into lots by virtue of being part of a housing subdivision. Thus, they do not need to demonstrate that their property went through the statutory process that Glass needed to complete for her property to have been laid out into lots as a housing subdivision. *Glass*, 18 Ohio St.2d 149, at 152-153. Given this key difference, we conclude that the trial court did not err in finding that *Glass* was distinguishable.

{¶20} Further, we conclude that the trial court did not err in determining that the properties at issue had been laid out into lots since the documents in the record

---

[3] In this case, the Garzas pointed out that the three parcels of land at issue were surveyed, platted, and recorded in 1969, 1970, and 1992, which was before a planning commission was established for Paulding County in 1996. The trial court also noted that the defendants argued that "the Board of County Commissioners gave authority to the Engineer's office to approve descriptions, and plats, and subdivisions and that the lots involved herein were 'laid into lots' as defined in *Glass* * * *." (Doc. 54).

established that these parcels of land had been surveyed, platted, and recorded. For this reason, Chapter 971 of the Ohio Revised Code is not applicable to this case because the properties at issue fall within the exemption set forth in R.C. 971.03(B). Thus, the Feasbys have failed to demonstrate that the trial court erred in granting summary judgment as to the first and second claims in their complaint. The first assignment of error is overruled.

*Second Assignment of Error*

{¶21} The Feasbys argue that genuine issues of material fact exist as to whether the Garzas made changes to the topography of their property.

Legal Standard

{¶22} We reincorporate the standard of review for summary judgment as set forth under the first assignment of error.

Legal Analysis

{¶23} In the third claim in their complaint, the Feasbys alleged that their land had drainage issues because of alterations that the Garzas had made to the topography of their (the Garzas') property. The Garzas indicated that their property is also affected by the drainage issue mentioned by the Feasbys in their complaint. However, the Garzas stated that this problem did not exist until the Feasbys constructed a large pond on their (the Feasbys') land.

{¶24} While no evidence presented in this case suggests that the Garzas made any topographical changes to their land during the time in which the Feasbys

lived on the adjacent property, the record indicates that the Feasbys excavated around 0.826 acres of their land to create a pond in 2021. This L-shaped body of water is roughly seventy-five feet wide with the two main wings that have lengths of roughly 210 feet and 240 feet. At points, this pond has several wide embankments that have slopes of up to twelve feet. At the time the Feasbys purchased their property in 2012, they also installed corrugated drainage tile and then later replaced portions of this system in 2021.

{¶25} The Garzas' property also has a pond that was created in 1979. The Garzas disclosed that the prior owners of their property had dredged the pond and left several piles of dirt near its banks. In 2009, the Garzas smoothed these piles of dirt across the banks of the pond and planted grass. However, the Feasbys did not come to live on the adjacent property for another three years. On appeal, the Feasbys argue that this drainage "issue was not truly discovered * * * until they began their fence building project in December of 2022"—after their L-shape pond was constructed in 2021. (Appellant's Brief, 9).

{¶26} The Feasbys provide no evidence that could connect the drainage issues on their property to the 2009 project on the Garzas' pond. Thus, the trial court correctly found that this 2009 project was "irrelevant" to the disposition of this case. (Doc. 54). Having examined the evidence in the record, we conclude that the Feasbys have not produced evidence that the Garzas caused the drainage problems identified in the complaint. The second assignment of error is overruled.

*Conclusion*

**{¶27}** Having found no error prejudicial to the appellants in the particulars assigned and argued, the judgment of the Paulding County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and MILLER, J.J., concur.**

**/hls**