[Cite as *Hubbard v. Hubbard*, 2025-Ohio-2828.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

JILL A. HUBBARD,                                    CASE NO. 4-24-27

     PLAINTIFF-APPELLEE,

  v.

STEPHEN F. HUBBARD,                          **OPINION AND**
                                                             **JUDGMENT ENTRY**
     DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Domestic Relations Division
Trial Court No. 20 DR 45211

**Judgment Affirmed**

**Date of Decision:  August 11, 2025**

APPEARANCES:

    *Stephen M. Szuch* **for Appellant**

    *Margaret G. Beck* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Stephen F. Hubbard ("Stephen") appeals the judgment of the Domestic Relations Division of the Defiance County Court of Common Pleas, arguing that the trial court erred by finding a prenuptial agreement to be invalid; failing to divide several assets in accordance with the prenuptial agreement; and failing to determine whether the spousal support provision in the prenuptial agreement was conscionable. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} In 2006, Jill A. Hubbard ("Jill") retained Stephen as her attorney to assist with a probate issue. After this matter had been resolved, Jill and Stephen began dating in August of 2007. During their relationship, Stephen did not enter a formal appearance as Jill's attorney in a legal proceeding. However, he did prepare a number of legal documents for her, including deeds and trust agreements.

{¶3} After they decided to get married, Stephen drafted a prenuptial agreement for himself and Jill to sign before their wedding. This document included a waiver of spousal support and stated that any income made during the marriage was to be separate property. On August 17, 2010, Jill went to Stephen's law firm and signed the prenuptial agreement. She then left the office to go and decorate the

wedding venue. On August 18, 2010, Jill and Stephen were married at a ceremony that had around forty to sixty guests in attendance.

{¶4} On September 18, 2020, Jill filed a complaint for divorce. In response, Stephen filed an answer and counterclaim with a copy of the prenuptial agreement that he had prepared. On August 25, 2021, Jill filed a memorandum that argued the prenuptial agreement was invalid and unenforceable as it had been obtained through duress, coercion, or overreaching. On February 8, 2022, Jill and Stephen testified at a hearing about the circumstances surrounding the preparation and execution of this contract.

{¶5} On January 19, 2023, the trial court issued a judgment entry that found the prenuptial agreement was invalid and unenforceable on the grounds that it was the product of fraud, duress, coercion, or overreaching. On November 5, 2024, the trial court issued a divorce decree that included an award of spousal support for Jill. This entry also classified fourteen accounts as marital property and divided the funds contained therein between the parties.

{¶6} Stephen filed his notice of appeal on December 5, 2024. On appeal, he raises the following three assignments of error:

**First Assignment of Error**

**The trial court abused its discretion when it invalidated the parties' prenuptial agreement, as the court's determination was not supported by competent evidence.**

**Second Assignment of Error**

**The trial court erred in its division of property by characterizing separate property as marital property subject to division.**

**Third Assignment of Error**

**The trial court erred in awarding spousal support to Appellee without conducting a specific unconscionability analysis.**

*First Assignment of Error*

{¶7} Stephen argues that the trial court abused its discretion in finding the prenuptial agreement to be invalid and unenforceable.

Legal Standard

{¶8} Prenuptial agreements are contracts made in anticipation of marriage that are used to define the property rights or economic interests of the parties. *Graham v. Graham*, 2007-Ohio-1091, ¶ 5 (3d Dist.).

> Such agreements are valid and enforceable (1) if they have been entered into freely without fraud, duress, coercion, or overreaching; (2) if there was full disclosure, or full knowledge and understanding of the nature, value and extent of the prospective spouse's property; and (3) if the terms do not promote or encourage divorce or profiteering by divorce.

*Gross v. Gross*, 11 Ohio St.3d 99 (1984), second paragraph of the syllabus. Prenuptial agreements "must meet these three 'special' conditions" but are otherwise contracts that are governed by the general principles of contract law. *Golan-Elliott v. Elliott*, 2017-Ohio-8524, ¶ 11-12 (3d Dist.), quoting *Johnson v. Johnson*, 2011-Ohio-500, ¶ 11 (3d Dist.). As to the first condition,

overreaching is defined as the situation where 'one party by artifice or cunning, or by significant disparity to understand the nature of the transaction, to outwit or cheat the other.' [*Gross*] at 105. The burden of proving fraud, duress, coercion or overreaching is on the party challenging the agreement.

(Citations omitted.) *Maloney v. Maloney*, 2023-Ohio-4448, ¶ 16-18 (7th Dist.). In reaching a conclusion on this element, courts are to "look to the totality of the surrounding circumstances . . . ." *Heimann v. Heimann*, 2022-Ohio-241, ¶ 14 (3d Dist.), quoting *Vanderbilt v. Vanderbilt*, 2013-Ohio-1222, ¶ 16 (9th Dist.).

{¶9} Of particular note, "the outcome of the analysis often turns on whether the challenging party had an opportunity to meet with counsel prior to execution." *Heimann* at ¶ 14, quoting *Fordeley v. Fordeley*, 2020-Ohio-5380, ¶ 27 (11th Dist.). In some situations, the "assistance of counsel may . . . be necessary for a fully informed and considered decision to sign" a prenuptial agreement. *Fletcher v. Fletcher*, 68 Ohio St.3d 464, 470 (1994). Further, "[t]he presentation of an agreement a very short time before the wedding ceremony will create a presumption of overreaching or coercion if . . . the postponement of the wedding would cause significant hardship, embarrassment or emotional stress." *Id*.

{¶10} Importantly, "[t]he parties to an [pre]nuptial agreement are in a fiduciary relationship to one another and, thus, are under a mandatory duty to act in good faith with a high degree of fairness and disclosure of all circumstances which materially bear on the [pre]nuptial agreement." *Elliott* at ¶ 12, quoting *Rowland v. Rowland*, 74 Ohio App.3d 415, 420 (4th Dist. 1991). Thus, prenuptial agreements

"must meet certain minimum standards of good faith and fair dealing." *Parrett v. Wright*, 2017-Ohio-764, ¶ 10 (2d Dist.).

## Standard of Review

**{¶11}** "In reviewing a trial court's ruling as to the enforceability of a prenuptial or antenuptial agreement, an appellate court cannot reweigh the evidence, but instead must uphold the trial court's factual findings when they are supported by competent evidence." *Fordeley* at ¶ 32. Since "[t]he validity of an [pre]nuptial agreement is a question of fact for the trial court," an appellate court will not reverse a trial court's decision on such a matter absent an abuse of discretion. *Heimann*, 2022-Ohio-241, ¶ 14, quoting *Vanderink v. Vanderink*, 2018-Ohio-3328, ¶ 19 (5th Dist.). An abuse of discretion is more than an error in judgment and is present where a decision is arbitrary, unconscionable, or unreasonable. *Souders v. U.S. Bank National Association*, 2025-Ohio-1781, ¶ 15 (3d Dist.).

## Legal Analysis

**{¶12}** The primary issue is whether the trial court erred in concluding that the prenuptial agreement was unenforceable because it was not entered into freely and instead involved overreaching. In this case, Stephen wrote the prenuptial agreement that he and Jill later signed as parties. He indicated that he did not draft the prenuptial agreement as Jill's attorney and clarified that he had not formally represented her in a legal proceeding since July of 2007.

{¶13} However, the trial court noted that Stephen "continued to act in the role of legal counsel" by preparing various legal documents for Jill in between July of 2007 and the date of their wedding. (Doc. 51). As with the other documents Stephen had prepared for her, Jill signed the prenuptial agreement without reviewing all of its terms. Her testimony also indicates that she became acquainted with Stephen while he was her attorney and that she believed he was still her lawyer at the time of their wedding. As such, she did not see a reason to have another attorney review this document.

{¶14} Stephen points out that Jill had signed a prenuptial agreement before one of her prior marriages and suggests that this experience should have familiarized her with this process. However, the trial court found that this prior experience did not necessarily mean that Jill would understand the terms of the present prenuptial agreement, especially since she was relying on Stephen's legal advice.

{¶15} As to the timing of this process, Stephen testified that he brought a copy of the prenuptial agreement home on July 20, 2010 and suggested that Jill have another attorney examine its terms. He indicated that Jill had almost one month to review this document and to seek independent legal advice. However, Jill testified that Stephen never suggested that she review this agreement with another attorney. She also testified that she did not see a copy of the prenuptial agreement prior to the day on which she signed it. On this point, the trial court found Jill's testimony to be credible.

{¶16} Further, neither party disputes that the prenuptial agreement was signed the day before the wedding. Stephen testified that, if Jill had objections to the prenuptial agreement on the date of execution, the wedding could have been postponed without hardship. The trial court noted that Stephen's testimony indicated that the wedding would not have moved forward as scheduled unless the agreement had been signed the day before the ceremony.

{¶17} In summary, the trial court found this agreement unenforceable because Stephen drafted a prenuptial agreement that he later signed as a party; the agreement was signed the day before the wedding; and Jill did not have the opportunity to review this document with another attorney. Having examined the record, we find no indication that the trial court abused its discretion in concluding that this prenuptial agreement was not entered into freely but was rather the product of overreaching. Accordingly, the first assignment of error is overruled.

*Second Assignments of Error*

{¶18} Stephen argues that the trial court should have classified several investment accounts as separate property pursuant to the terms of the prenuptial agreement.

Legal Standard

{¶19} Under App.R. 12(A)(1)(c), "[a]ppellate courts are to 'decide each assignment of error' raised on appeal 'unless an assignment of error is made moot by a ruling on another assignment of error . . . .'" *Durfor v. West Mansfield*

*Conservation Club*, 2022-Ohio-416, ¶ 39 (3d Dist.), quoting App.R. 12(A)(1)(c). An issue is moot where it presents "no actual genuine, live controversy, the decision of which can definitely affect existing legal relations." *Sullinger v. Reed*, 2021-Ohio-2872, ¶ 52 (3d Dist.), quoting Borchard, Declaratory Judgments, at 35 (2d Ed. 1941). "Put differently, an assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court." *Sullinger* at ¶ 52, quoting *State v. Gideon*, 2020-Ohio-6961, ¶ 26.

### Legal Analysis

{¶20} Stephen argues that the trial court failed to enforce the terms of the prenuptial agreement when it classified the funds in roughly fourteen accounts as marital property. However, we have already concluded that the trial court did not abuse its discretion in deciding that the prenuptial agreement was invalid and unenforceable. Thus, our disposition of the first assignment of error renders this argument moot. For this reason, we decline to address the arguments raised in the second assignment of error pursuant to App.R. 12(A)(1)(c).

### *Third Assignment of Error*

{¶21} Stephen argues that the trial court failed to perform a conscionability test to determine whether spousal support provision in the prenuptial agreement were conscionable at the time of the divorce.

Legal Standard

**{¶22}** As noted previously, a prenuptial agreement is a type of contract that must satisfy three "special" conditions to be enforceable. *Elliott*, 2017-Ohio-8524, ¶ 11. Beyond these three conditions, a provision in a prenuptial agreement concerning spousal support must also satisfy an additional test of conscionability. *Heimann*, 2022-Ohio-241, ¶ 16, 52. *See also Saari v. Saari*, 2009-Ohio-4940, ¶ 10 (9th Dist.). Thus, a party may challenge a spousal support provision in an otherwise valid prenuptial agreement on the grounds that a change in circumstances has rendered enforcement of that portion of the contract unconscionable. *Menkhaus v. Menkhaus*, 2022-Ohio-2369, ¶ 43 (1st Dist.); *Vanderbilt* at ¶ 39. *See Gross*, 11 Ohio St.3d 99, 109 (A spousal support provision in a prenuptial agreement "may lose [its] . . . validity" if enforcement would be unconscionable at the time of the divorce.).

Legal Analysis

**{¶23}** In this case, the trial court concluded that the entire prenuptial agreement was invalid and unenforceable because it did not satisfy all three of the "special" conditions. While a spousal support provision in a valid prenuptial agreement needs to be conscionable to be enforceable, the provision at issue in this case is a clause in an invalid contract. For this reason, the spousal support provision was unenforceable regardless of its conscionability. Since "the trial court did not enforce the parties' prenuptial agreement," the conscionability test was ultimately

"inapplicable" in this case. *Pond v. Pond*, 2021-Ohio-1708, ¶ 26 (10th Dist.). Accordingly, the third assignment of error is overruled.

*Conclusion*

**{¶24}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Domestic Relations Division of the Defiance County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**WALDICK, P.J. and ZIMMERMAN, J., concur.**

# <u>JUDGMENT ENTRY</u>

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.   The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.


        John R. Willamowski, Judge


        Juergen A. Waldick, Judge


        William R. Zimmerman, Judge

DATED:
/hls